1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD REINHARDT, and JON ARMSTRONG, | ) ) ) | 1:11-CV-1944  AWI SMS |
| Plaintiffs, | ) | ORDER ON DEFENDANT'S |
| v. | ) ) | MOTION TO DISMISS |
| GEMINI MOTOR TRANSPORT, an Oklahoma limited liability partnership, and DOES 1-10, inclusive, | ) ) ) ) | (Doc. No. 6) |
| Defendants. | ) ) | |

This case is arises from the termination of an employment relationship between Plaintiffs Donald Reinhardt ("Reinhardt") and Jon Armstrong ("Armstrong") (collectively "Plaintiffs"), and their former employer Defendant Gemini Motor Transport ("Gemini").  Plaintiffs allege ten California state law causes of action under the Labor Code, the Business & Professions Code, the Government Code, contract related claims, and state law wrongful termination in violation of public policy.  Gemini now moves to dismiss eight of the ten causes of action (Gemini does not challenge Armstrong's age-related termination claims), and also moves to strike Plaintiffs' request for disgorgement of profits.  For the reasons that follow, Gemini's motion will be granted in part and denied in part.

## BACKGROUND[1]

From the Complaint, Reinhardt was employed by Gemini as a gasoline/diesel fuel

---

[1] The Court is required to accept as true all factual allegations in the FAC when resolving a Rule 12(b)(6) motion.  See Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008).  Accordingly, the factual background section is derived from the factual allegations in the complaint.

delivery truck driver from August 2006 to January 29, 2010.  Reinhardt was stationed at a Love's

Gas Station[2] in Ripon, California.  Reinhardt worked 12 hour shifts.  Reinhardt's duties as a

Gemini driver included: (1) driving an empty truck from Ripon to Stockton, California, loading

the truck with fuel at a "tank farm" in Stockton, and then driving back to Ripon to unload the

fuel; (2) driving an empty truck from Ripon to Fresno, California, filling the truck at a "tank

farm" in Fresno, and then driving back to Ripon to unload the fuel; (3) delivering fuel from

Ripon to a Love's station in Lost Hills, California; and (4) delivering fuel from Ripon to a Love's

station in Tulare, California.[3]  Reinhardt was paid a flat rate fee for these deliveries.  Specifically,

Reinhardt was paid $63.14 for the 48-mile round trip to Stockton, $135 for the 240-mile round

trip to Fresno, $258 for the 460-mile round trip to Lost Hills, and approximately $135 for the

delivery to Tulare.

Armstrong was employed by Gemini as a gasoline/diesel fuel delivery truck driver from

May 11, 2006, to March 21, 2011.  Armstrong was assigned to the Love's station in Lost Hills.

Armstrong resided in Bakersfield, California, and began each day by going to the facility in

Bakersfield where the Gemini delivery truck was located.  Armstrong then would drive his empty

truck to a "tank farm" in either Bakersfield or Fresno, fill up there, drive to Lost Hills and

unload, and then drive the empty truck back to Bakersfield.  Armstrong was paid a flat-rate fee of

$132.20 for trips involving fuel loads from Fresno, and $81.00 or $94.55 for trips involving fuel

loads from Bakersfield.[4]  For the first 3 years of employment, Armstrong's shifts were less than

12 hours, but after deliveries to Fresno were added, his shifts were more than 12 hours.

On a daily basis during their employment with Gemini, and pursuant to a company

practice and policy, Gemini knowingly failed to provide Plaintiffs (and other drivers) with

[2]Gemini is a wholly owned subsidiary of Love's Gas Stations.  Gemini is an "in house vendor" that
provides gasoline/diesel fuel deliveries to various gas stations owned by Love's.

[3]As of October 2009, the Complaint indicates that Reinhardt stopped making deliveries to Lost Hills, and
instead made deliveries to Tulare.

[4]There were two "tank farms" in Bakersfield where Armstrong would load his empty truck with
gasoline/diesel fuel.  However, one of the "tank farms" went out of business, which caused Armstrong to
occasionally travel to the "tank farm" in Fresno.

timely, off-duty, 30-minute meal periods or timely, off-duty 10-minute rest periods at any time. Instead, Gemini actively and forcefully discouraged and prevented drives from having any off-duty meal periods or rest periods in the course of the drivers' 12+ hour work days.  Gemini failed to implement or disseminate policys that would be consistent with the drivers' rights to a 30-minute meal period and 10-minute rest periods.

On a daily basis and throughout Plaintiffs' employment with Gemini, various managers and dispatch personnel (who were located at corporate headquarters in Oklahoma City, Oklahoma) imposed time pressures on drivers by continually calling drivers on communication devices.  Gemini personnel would explicitly and repeatedly instruct drivers to "go straight there and come straight back," ask for ETA's back to the station, tell drivers to "run and get the load done," reminding drivers of the written policy that drivers are not allowed to leave the area while loading or unloading is in progress because of the fuel's hazardous nature, and warning drivers that they are not to pull off the road or stop at all, especially while carrying a load.  Drivers do all the loading and unloading work themselves.  While at the "tank farms" loading gasoline/diesel fuel, waiting to load may take considerable time (because of the presence of other trucks), and the drivers are not permitted to leave their trucks while they are in the queue for fuel.  Further, Gemini trucks are equipped with an on-board computer GPS and monitoring system.  The computer system automatically and continuously sends a stream of information to corporate headquarters in Oklahoma City.  This permits Gemini personnel to see a truck's exact location, speed, direction, and engine RPM's on a second-by-second basis.  The on-board computer system allows managers to virtually ride with every driver at all times.  Finally, Gemini drivers are required to immediately input into the on-board computer system every change of status in the course of a day, including the exact timing and nature of every stop.  Plaintiffs are unaware of any way to identify periods for meal and rest breaks on the computer system.

Per Gemini policy, drivers are compensated for standard duties according to a uniform piece-rate system, which is different from an hourly-wage method in that drivers are paid primarily on the basis of miles driven rather than hours worked.  Per Gemini policy, drivers are required to perform significant amounts of non-driving duties on either a daily or weekly basis.

These non-driving duties are not recognized under any pay rubric, and the drivers receive no separate compensation.  The mandatory duties include: (1) daily pre-trip and post-trip vehicle inspections; (2) daily truck refueling; (3) weekly truck wash for Lead Drivers;[5] (4) detention or waiting time at the "tank farms"; and (5) time spent driving an empty vehicle.[6]

When Armstrong was hired, the regional manager told Armstrong that drivers would receive a minimum of $200 per day.  Between 2008 and 2009, Gemini's National Manager sent drivers a letter stating that minimum daily pay was being reduced to $165.  However, drivers often did not receive the minimum pay, even after complaining about it.

When Reinhardt applied for his job in 2006, Gemini assured him that the company provided pay for detention or waiting time at the "tank farms" of $24 per hour.  Gemini did this for the first month of employment, but then simply dropped this category of pay.  Similarly, when Reinhardt began his employment, Gemini paid $15 for truck wash time, and later increased that amount to $25.  However, after the first year, Gemini stopped paying anything for this activity.

## LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

---

[5]Armstrong was a Lead Driver in his final 2 years of employment with Gemini.  Reinhardt was a Lead Driver at Ripon for the first 3 years of his employment.

[6]The complaint alleges that Gemini documents appear to indicate that the flat-rate fees are actually considered to be only for the delivery half of each round trip.

1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.  The Ninth Circuit has distilled the following principles from Iqbal and Twombly:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  If a Rule 12(b)(6) motion is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  That is, leave to amend need not be granted where amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**DEFENDANTS' MOTION**

**1.      California Labor Code § 226.7 and § 512 (First & Second Causes of Action)**

*Defendant's Argument*

Gemini argues that dismissal is proper because these claims are preempted by 49 U.S.C. § 14501, the Federal Aviation Administration Authorization Act ("FAAAA").  Gemini contends that the rationale and analysis of *Dilts v. Penske Logistics LLC*, 2011 U.S. Dist. LEXIS 122421 (S.D. Cal. Oct. 19, 2011), shows that the meal and rest periods significantly affect the frequency

1   and scheduling of routes, the number of routes each driver may go per day, the types of roads that

2   the driver takes, and the amount of time it takes to reach the destination.  Accordingly, Gemini

3   argues that FAAAA preemption applies.  Also, the allegations in support of these claims are

4   largely legal conclusions, and there are insufficient factual allegations to show plausibility.

5       *Plaintiffs' Opposition*

6       Plaintiffs argue that these causes of action are not preempted by the FAAAA.  *Dilts* is an

7   outlier case that is contrary to a host of decisions by lower federal and California courts.  Further,

8   the facts in this case show that in-house drivers like Plaintiffs functioned like drones in that they

9   drove a fixed number of times from point A to point B to point C to point A.  Requiring meal and

10  rest breaks would not significantly affect price, route or service, and thus, would not implicate

11  the FAAAA.  Also, the complaint contains many detailed, factual allegations that are sufficient to

12  state plausible claims.

13      *Legal Standard*

14      "Congress enacted the [FAAAA] in 1994 to prevent States from undermining federal

15  deregulation of interstate trucking."  American Trucking Ass'ns v. City of Los Angeles, 660 F.3d

16  384, 396 (9th Cir. 2011) (hereinafter "ATA").  In pertinent part, the FAAAA provides that a

17  State "may not enact or enforce a law . . . related to a price, route, or service of any motor carrier

18  . . . with respect to the transportation of property."  49 U.S.C. § 1501(c)(1); Rowe v. New

19  Hampshire Transp. Ass'n, 552 U.S. 364, 368 (2008).  "The terms 'rates, routes, and services'

20  were used by Congress in the public utility sense; that is, service refers to such things as the

21  frequency and scheduling of transportation, and to the selection of markets to or from which

22  transportation is provided. . . . . Rates indicates price; routes refers to courses of travel."  ATA,

23  660 F.3d at 396; Air Transport Ass'n of Am. v. City & Cnty of San Francisco, 266 F.3d 1064,

24  1071 (9th Cir. 2001).  In determining whether § 14501(c)(1) of the FAAAA preempts State

25  action, three questions are asked:

26      First, we must consider whether the provision "relate[s] to a price, route, or
        service of a motor carrier."  If the answer is no, the provision does not fall within
27      the preemptive scope of § 14501(c)(1). If the answer is yes, we must consider
        whether the provision "has the force and effect of law" – that is, whether the
28      provision was enacted pursuant to the State's regulation of the market, rather than

the State's participation in the market in a proprietary capacity.  If the provision does not fall within the market participant doctrine and relates to rates, routes, or services, we turn to the third inquiry and consider whether any of the FAAAA Act's express exemptions save the regulation from preemption. As relevant here, the FAAAA Act does not restrict the safety regulatory authority of a State with respect to motor vehicles.

ATA, 660 F.3d at 395-96.  State laws "having a connection with, or reference to, carrier rates, routes, and services are preempted." Rowe, 552 U.S. at 370-71; ATA, 660 F.3d at 396.

"Preemption resulting from 'reference to' price, route, or service occurs where a State's law acts immediately and exclusively upon price, route or service, or where the existence of a price, route or service is essential to the law's operation." Air Transport, 266 F.3d at 1071.  In determining whether a state law has a "connection to" rates, routes, or services, courts examine the actual or likely effect of a State's action.  ATA, 660 F.3d at 396.  Preemption may occur even if the state law's effect is only indirect.  See Rowe, 552 U.S. 370; ATA, 660 F.3d at 396.  However, the state law's effect on rates, routes, or services must be more than tenuous, remote, or peripheral. Rowe, 552 U.S. at 370; ATA, 660 F.3d 396-97.  In "borderline cases, the proper inquiry is whether the provision, directly or indirectly, binds the [motor] carrier to a particular price, route, or service and thereby interferes with competitive market forces within the . . . industry." ATA, 660 F.3d at 397; Air Transport, 266 F.3d at 1072.

### Discussion[7]

The Ninth Circuit has yet to address the question of whether the FAAAA preempts the Labor Code's meal and rest period requirements.  Four cases dealing with FAAAA preemption of the meal and rest period laws have been presented to the Court – *Esquivel v. Vistar Corp.*,

---

[7]Plaintiffs have filed a request for judicial notice ("PRJN"), see Doc. No. 13, in which they seek judicial notice of two unpublished federal district court opinions and two state superior court orders.  The Court will take judicial notice of *Dunbar Armored, Inc. v. Rea*, 3:04-cv-602 WQH WMC (S.D. Cal. July 9, 2004).  With respect to *Iniguez v. Evergreen Aviation Grnd. Log. Enter., Inc.*, 2:07-cv-7181 AHM (C.D. Cal. Sept. 11, 2009), that case did not deal with a motor carrier like Gemini.  Instead, the defendant in *Iniguez* provided services completely within airports, for example, towing planes in and out of gates, unloading and loading baggage out of, into, and between airplanes, and guiding airplanes with "wands" to the gates.  Plaintiffs do not explain how *Iniguez* is probative given its significantly different factual background.  Because of *Iniguez*'s inapposite factual background, the Court will not take judicial notice of that opinion.  With respect to the California Superior Court decisions, the Court is unaware of any published reporters in which California superior court opinions (except those from the appellate division of a superior court) may be found, and the Court is certainly not bound by such opinions.  Without further explanation from Plaintiffs, the Court does not view the two California Superior Court decisions as having any precedential value for purposes of this case.  Therefore, the Court will not judicially notice the California Superior Court decisions.

1   2012 U.S. Dist. LEXIS 26686 (C.D. Cal. 2012), *Dilts v. Penske Logistics, LLC*, 2011 U.S. Dist.

2   LEXIS 122421 (S.D. Cal. Oct. 19, 2011), *Cardenas v. McLane Food Services, Inc.*, 796

3   F.Supp.2d 1246 (C.D. Cal. 2011), and *Dunbar Armored, Inc. v. Rea*, 3:04-cv-602 WQH WMC

4   (S.D. Cal. July 9, 2004).  Of these cases, only *Esquivel* did not have the benefit of having

5   evidence presented to it.

6       The evidence presented in *Dunbar Armored* convinced that District Court *inter alia* that

7   the meal and lunch period laws did not have a sufficient effect on that defendant's prices, routes,

8   or services; thus, FAAAA preemption was not found.[8]  See PRJN Ex. B at 8-10.  The evidence

9   presented in *Dilts* convinced that District Court that the meal and lunch period laws would have

10  more than a tenuous effect on that defendant's prices, routes, and services; thus FAAAA

11  preemption was found.  See Dilts, 2011 U.S. Dist. LEXIS 122421 at *35.  In *Cardenas*, that

12  District Court found that case law suggested that the FAAAA did not preempt the meal and rest

13  break laws.  See Cardenas, 796 F.Supp.2d at 1255.  The *Cardenas* court also characterized that

14  defendant's evidence as "shaky" and "speculative."  Id. at 1255-56.  Despite this, the District

15  Court held that the plaintiff did not rebut the "shaky" evidence, "the question of whether

16  compliance with California rest and meal break laws impacts [the defendant's] price, service, and

17  routes is a genuine issue of material fact," and that the trier of fact would determine the impact of

18  the meal and rest period laws on that defendant's prices, routes, and services.  Id. at 1256.

19      The differing results of these cases illustrate the potential importance of evidence beyond

20  the allegations of a complaint in determining FAAAA preemption.  The Court does not believe

21  that it can determine whether FAAAA preemption applies at this stage in the proceedings.  The

22  Court finds it significant that the Complaint describes essentially "in-house carriers" who

23  function "like drones" and make very specific and limited deliveries.  This fact pattern does not

24  appear to be part of any of the cases cited by the parties, and the Court is not satisfied with the

25  parties' discussion of this fact pattern to date.  The Court finds that additional arguments, and

26

27      [8]*Dunbar Armored* involved both a motion for preliminary injunction and a Rule 12(b)(6) motion.  In

28  deciding the preemption issue, the District Court considered and cited to a declaration that was presented by the
    Dunbar corporation.  See RJN Ex. B at 8-9.

1    most likely additional evidence, is necessary in order to determine whether the effects of the meal

2    and rest break laws are more than tenuous on Gemini's prices, routes, and services.

3         Plaintiffs rely heavily on *Cardenas*.  *Cardenas* was indeed close to endorsing Plaintiffs'

4    position that the meal and break laws are not preempted by the FAAAA.  Yet, as noted above,

5    *Cardenas* acknowledged that the defendant's evidence could support a finding of preemption.

6    See id.  It was on the basis of this evidence, and the absence of any rebuttal of that evidence, that

7    caused the District Court to decline to rule that FAAAA preemption was inapplicable.  See id.[9]

8         Gemini relies heavily on *Dilts* and *Esquivel*.  Contrary to Plaintiffs' arguments, the Court

9    is not inclined to dismiss *Dilts* out of hand as a "mere outlier" case.  However, *Dilts* had the

10   benefit of an evidentiary record that demonstrated the disruption that the meal and rest period

11   laws would have on prices, routes, or services.  *Equivel*, on the other hand, did not have

12   additional evidence like *Dilts*.  However, there is nothing in the *Esquivel* case to indicate that the

13   nature of the deliveries made in that case is similar to those in the case at bar, i.e. the alleged

14   fixed, drone like routes of essentially an "in house" carrier.  Given *Esquivel*'s adoption of the

15   reasoning of *Dilts*, it appears that the nature of the deliveries made in *Esquivel* were not

16   materially different from the deliveries in *Dilts*.[10]

17        In sum, the Court is not rejecting either parties' respective positions at this point.  The

18   Court believes that additional arguments and evidence is needed before it can resolve the issue of

19   FAAAA preemption.  In the context of a Rule 12(b)(6) motion, and given the allegations in the

20   Complaint, the Court cannot determine whether FAAAA preemption applies to Plaintiffs' meal

21   and rest period claims.  Accordingly, dismissal of the first two causes of action will be denied.[11]

22   _____

23        [9]*Cardenas* involved cross motions for summary judgment.  If the evidence was insufficient to support a
     finding of FAAAA preemption, then presumably the plaintiff's motion for summary judgment on the issue would

24   have been granted.  Instead, both motions were denied.  See Cardenas, 796 F.Supp.2d at 1256.

25        [10]In their reply brief, Gemini informs the Court that an appeal was taken by the plaintiffs in *Esquivel*.
     See Reply at 2 n.1.  That appeal was voluntarily dismissed on April 4, 2012.  See Case No. 12-55384 (9th Cir.),

26   Document No. 6.  However, the Court notes that a Rule 54(b) motion was granted in *Dilts* on the issue of FAAAA
     preemption of the meal and rest break laws, and an appeal to the Ninth Circuit was filed on April 18, 2012.  See Doc.

27   Nos. 125, 128-130 in Case No. 08-cv-318  (S.D. Cal.).

28        [11]As should be clear, the parties later may re-raise the issue of FAAAA preemption through a mechanism
     other than a Rule 12(b)(6) motion.

**2.**     **California Labor Code § 1194 (Third Cause of Action)**[12]

*Defendant's Argument*

Gemini argues that this claim should be dismissed because Plaintiffs were paid pursuant to a valid piece rate system that was based on each delivery made. Employees who are paid on a piece rate system are no treated in the same manner as hourly employees. Plaintiffs' reliance on the *Armenta* case is misplaced because that case did not involve a piece rate system. Also, the allegations in support of this claim are largely legal conclusions, and there are insufficient factual allegations to support a plausible claim.

*Plaintiffs' Opposition*

Plaintiffs argue that the third cause of action properly states a claim. The complaint alleges that Plaintiffs performed significant duties that were not covered by any pay rubric. Under *Armenta*, the employer must pay compensation for those tasks. While *Armenta* did not involve a piece rate system, other cases that did involve a piece rate systems have relied upon and extended *Armenta*. Also, the complaint contains many detailed, factual allegations that are sufficient to state a plausible claim.

*Legal Standard*

California's Industrial Welfare Commission ("IWC") has been conferred with legislative, executive, and judicial powers, and, *inter alia*, has the duty to ascertain the wages, hours and labor conditions of all employees in California, conduct a full review of the adequacy of the minimum wage at least once every two years, and to convene wage boards and adopt new wage orders if the IWC finds that the minimum wages may be inadequate to supply the cost of proper living. Martinez v. Combs, 49 Cal.4th 35, 55 (2009). "[S]pecific employers and employees become subject to the minimum wage only under the terms of an applicable wage order, and an employee who sues to recover unpaid minimum wages actually and necessarily sues to enforce the wage order." Id. at 57; see also id. at 62. IWC Wage Order 9, which applies to the transportation industry, mandates that all employers "pay to each employee, on the established

---

[12]Numerous code sections are identified in the Complaint, but § 1194 is the only cited code section that actually authorizes a lawsuit.

payday . . . not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." Cal. Code Regs. Title 8, § 11090, subd. 4(B); Fitz-Gerald v. SkyWest, Inc. 155 Cal.App.4th 411, 416 (2007). The term "hours worked" means "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether required or not to do so." Cal. Code Regs. Title 8, § 11090, subd. 4(H); see Morillion v. Royal Packing Co., 22 Cal.4th 575, 582 (2000).

The Labor Code provides that, "any employee receiving less than the legal minimum wage . . . applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . . ." Lab. Code § 1194(a); Martinez, 49 Cal.4th at 56-57. An employee may bring suit under Labor Code § 1194 to recover for time that he or she worked but was not paid. Armenta v. Osmose, Inc., 135 Cal.App.4th 314, 323 (2005). California courts recognize that "all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." Armenta, 135 Cal.App.4th at 324. That is, "[c]ompliance with the minimum wage law is determined by analyzing the compensation paid for each hour worked; averaging hourly compensation is not permitted under California law." Sheppard v. North Orange County Regional Occupational Pr , 191 Cal.App.4th 289, 297 n.5 (2010).

*Discussion*

The Complaint alleges that there are non-driving activities for which there is no compensation provided under any pay rubric. See Complaint ¶ 27. The Complaint then lists five categories of activities that allegedly fall outside of any pay rubric and for which Plaintiffs received no compensation. See id. These allegations indicate a violation of the minimum wage law because they indicate a failure to compensate for each hour worked by Plaintiffs. See Sheppard, 191 Cal.App.4th at 297 n.5.

Gemini argues that Plaintiffs are impermissibly relying on the *Armenta* case, since that case did not involve a piece-rate system. However, Plaintiffs are correct that *Armenta*'s rules that every hour worked must be compensated, and that "averaging" is not permitted under

11

California law, have been recognized in piece-rate cases.  See Cardenas v. McLane Foodservices, Inc., 796 F.Supp.2d 1246, 1252-53 (C.D. Cal. 2011); Ontiveros v. Zamora, 2009 U.S. Dist. LEXIS 13073, *7-*15 (E.D. Cal. Feb. 20, 2009).  Distinguishing *Armenta* only on the basis that it did not involve a piece rate system is not persuasive.  See Cardenas, 796 F.Supp.2d at 1252-53; Ontiveros, 2009 U.S. Dist. LEXIS 13073 at *7-*15.

Gemini also appears to argue that the five categories expressly identified in the Complaint fall under the established piece-rate system.  Admittedly, some of the categories look as if they would fall within the piece rate system.  However, the Complaint expressly alleges that the five categories are not compensated under *any* pay rubric.  See Complaint at ¶ 27.  In the context of a Rule 12(b)(6) motion, the Court must assume the truth of the factual allegations. See Marceau, 540 F.3d at 919.  Therefore, despite Gemini's contrary position, Plaintiffs were not compensated for the five identified activities by the piece rate system, for purposes of this motion.

Because the Complaint identifies five specific work activities for which Plaintiffs received no compensation under any of Gemini's pay rubrics, dismissal of this cause of action is inappropriate.  See Cal. Code Regs. Title 8, § 11090, subd. 4(B); Sheppard, 191 Cal.App.4th at 297 n.5.

### 3.    Labor Code § 201 and § 203 (Fourth Cause of Action)

#### *Defendant's Argument*

Gemini argues that this cause of action should be dismissed because Plaintiffs have not shown that they were entitled to wages in addition to those wages that were actually received upon termination.  Because the previous three causes of action are invalid, this claim is invalid. Also, the allegations in support of this claim rest on an improper legal conclusion of knowing and willful conduct.

#### *Plaintiffs Opposition*

Plaintiffs argue that dismissal is not appropriate because, contrary to Gemini's argument, the first three causes of action are valid and properly pled.  Thus, this claim is also proper.  Also, the complaint contains many factual allegations that are sufficient to state a plausible claim.

*Discussion*

Gemini's argument regarding reliance on legal conclusions is not persuasive.  Mental states may be alleged generally.  See Fed. R. Civ. Pro. 9(b).  The remainder of Gemini's argument is premised on the validity of the of first three causes of action.  As the Court has not dismissed each of the first three causes of action, the Court will not dismiss this cause of action.

**4.      Labor Code § 226 (Fifth Cause of Action)**

*Defendant's Argument*

Gemini argues that this claim should be dismissed because Plaintiffs have failed to allege two required elements.  The complaint does not allege that Gemini knowingly and intentionally failed to provide accurate itemized wage statements, and does not allege that Plaintiffs suffered any legally cognizable injury.  Also, Reinhardt's wage statement is barred by the one year statute of limitations because he is seeking penalties under § 226.  Finally, the allegations in support of this claim are largely legal conclusions, and there are insufficient factual allegations to support a plausible claim.

*Plaintiffs' Opposition*

Plaintiffs state that the relevant facts needed to establish these causes of action are contained within the first thirty-three paragraphs of the complaint.  With respect to Reinhardt's claim, the tolling agreement between him and Gemini first took effect on November 24, 2010 and ended on September 30, 2011.  Reinhardt was terminated on January 29, 2010, and this suit was filed November 21, 2011.  When the applicable tolling is considered, Reinhardt's claims are timely.  Also, the complaint contains many detailed, factual allegations that are sufficient to state a plausible claim.

*Legal Standard*

Labor Code § 226(a) requires an employer at the time that wages are paid to provide an accurate itemized statement that contains nine items.  See Cal. Labor Code § 226(a).  Labor Code § 226(e) reads: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual

1   damages or [penalties ranging from $50 to $4,000 depending on the circumstances], and is

2   entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code § 226(e).  In order

3   to recover under Labor Code § 226(e), a plaintiff must show: (1) a violation of § 226(a); (2) the

4   violation of § 226(a) was knowing and intentional; and (3) an injury suffered as a result of the

5   violation of § 226(a).  See Cal. Lab. Code § 226(e); Harris v. Vector Mktg. Corp., 656 F.Supp.2d

6   1128, 1146 (C.D. Cal. 2009); Elliot v. Spherion Pacific Work, LLC, 572 F.Supp.2d 1169, 1180-

7   81 (N.D. Cal. 2008); Price v. Starbucks Corp., 192 Cal.App.4th 1136, 1142-43 (2011).  Because

8   § 226(e) requires the demonstration of an actual suffered injury, the deprivation of the

9   information required by § 226(a), "standing alone, is not a cognizable injury."  Price, 192

10  Cal.App.4th at 1143; Jaimez v. Daiohs USA, Inc., 181 Cal.App.4th 1286, 1306-07 (2010).

11  Additionally, if a plaintiff attempts to obtain the statutory penalties provided by Labor Code

12  § 226(e), then the one year statute of limitations of California Civil Code § 340(a) applies.  See

13  Elliot, 572 F.Supp.2d at 1179 & n.9.

14          *Discussion*

15                  a.      General Pleading

16          Gemini's arguments with respect to the sufficiency of the allegations are correct.  The

17  Complaint fails to allege knowing and intentional conduct by Gemini, and it fails to allege any

18  actual injury that was suffered by Plaintiffs as a result of the § 226 violation.  The Complaint

19  merely identifies categories of pay that were not included in the wage statement and indicates

20  that Plaintiffs are entitled to statutory penalties.  See Complaint at ¶¶ 72-73.  That is, the

21  Complaint does not identify a cognizable injury because only a deprivation of Labor § 226(a)

22  information is pled.  See Price, 192 Cal.App.4th at 1143.  Accordingly, the Court will dismiss

23  this cause of action.

24                  b.      Timeliness of Reinhardt's Cause of Action

25          Reinhardt does not argue that the Civil Code § 340(a) one year statute of limitations is

26  inapplicable to his claims.  Instead, Reinhardt relies on a tolling agreement he had with Gemini.

27  Reinhardt's employment with Gemini terminated on January 29, 2010.  See Complaint ¶ 9.

28  Reinhardt's tolling agreement was in effect from November 24, 2010, until September 30, 2011.

See Complaint ¶ 37.  The Complaint was filed on November 21, 2011.

From January 29, 2010, to November 23, 2010, is 300 days.  From October 1, 2011, until November 21, 2011, is 52 days.  Thus, considering the time that was tolled, 352 days had elapsed from the time of termination to the time of suit for purposes of the statute of limitations.  Since there are 365 days in a year, Reinhardt still had 13 days in which to file suit for any claims that had accrued at the time of termination.  Therefore, given the 13 additional days that Reinhardt had, any Labor Code § 226(e) claims that accrued on or before January 15, 2010, are barred by the statute of limitations, but any Labor Code § 226(e) claims that accrued on or after January 16, 2010, are timely.  Dismissal of Reinhardt's Labor Code § 226(e) cause of action will be with leave to amend, but only as to those claims that accrued on or after January 16, 2010.  See Nguyen v. Baxter Healthcare Corp., 2011 U.S. Dist. LEXIS 141135, *29-*31 (C.D. Cal. Nov. 28, 2011); Elliot, 572 F.Supp.2d at 1179.

**5.      Breach of Contract & Breach of the Covenant of Good Faith and Fair Dealing (Sixth & Seventh Causes of Action)**

*Defendant's Argument*

Gemini argues that these claims should be dismissed because employers have the right to unilaterally change the terms of employment, including compensation.  Where the employee continues employment after the notice of the changed terms, the employee is deemed to have accepted the changed terms and conditions.  Because Plaintiffs had notice of the changed terms about which they now complain, but nevertheless remained employed with Gemini, Plaintiffs are deemed to have agreed to the changes.  Accordingly, there is no breach of contract.

*Plaintiffs' Opposition*

Plaintiffs state that the relevant facts needed to establish these causes of action are contained within the first thirty-three paragraphs of the Complaint.  The Complaint alleges the following breaches of contract: (1) reducing the minimum daily guarantee pay from $200 to $165; (2) "many times" not providing Plaintiffs with minimum daily pay; (3) creating an environment which discouraged drivers from pursuing their minimum daily pay; (4) eliminating

the $24 per hour detention or waiting time pay; (5) reducing the additional $200 per month to $100 per month for Lead Drivers; and (6) eliminating the $15 to $25 per week for truck washing time.  See Complaint ¶¶ 75-78.

*Legal Standards*

To be entitled to damages for breach of contract, a plaintiff must plead and prove the following elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff.  Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011).

In California, there is "an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal.4th 390, 400 (2000).  The covenant is "read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc., 2 Cal.4th 342, 373 (1992).  A cause of action for breach of the good faith covenant is "premised on the breach of a specific contractual obligation." Innovative Bus. P'ships, Inc. v. Inland Cntys. Reg'l Center, Inc., 194 Cal.App.4th 623, 6 (2011).  If there is no breach of the underlying contract, then there can be no breach of the covenant of good faith and fair dealing.  See Hawkins v. Home Depot USA, Inc., 294 F.Supp.2d 1119, 1124 (N.D. Cal. 2003); Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 349-50 (2000).  "Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract." Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga, 175 Cal.App.4th 1306, 1344 (2009).

In California, there is a presumption that an employment relationship is "at-will."  Cal. Lab. Code § 2922; Schachter v. Citigroup, Inc., 47 Cal.4th 610, 620 (2009); DiGiacinto v. Ameriko-Omserv Corp., 59 Cal.App.4th 629, 634-35 (1997).  "The at-will presumption authorizing an employer to discharge or demote an employee similarly and necessarily authorizes an employer to unilaterally alter the terms of employment, provided that the alteration does not violate a statute or breach an implied or express contractual agreement." Schachter, 47 Cal.4th at

620; Singh v. Southland Stone, U.S.A., Inc., 186 Cal.App.4th 338, 356 (2010).  These alterations

may include a reduction in salary.  Singh, 186 Cal.App.4th at 356.  "An employee who continues

in the employ of the employer after the employer has given notice of changed terms or conditions

of employment has accepted the changed terms and conditions."  Schachter, 47 Cal.4th at 620;

Sing, 186 Cal.App.4th at 356; DiGiacinto, 59 Cal.App.4th at 637.

*Discussion*

The allegations in the Complaint indicate that Gemini lowered the daily minimum pay,

lowered the additional monthly amount paid to Lead Drivers, and eliminated two classes of pay –

truck washing and detention/waiting time.  The nature of the allegations indicate that Plaintiffs

were aware/had notice of both of the reductions and both of the eliminated pay categories.  See

Complaint ¶¶ 28-31, 75-78.  The Complaint also indicates that Plaintiffs continued their

employment with Gemini despite the reductions and eliminations.  Thus, the Complaint's

allegations indicate that the rule discussed in *Schachter* applies.  See Schachter, 47 Cal.4th at

620.  Plaintiffs do not argue that they did not have notice or that Gemini's conduct violated a

statutory provision or an express contractual provision, or that the *Schachter* rationale somehow

does not apply to them.  Instead, without explanation, Plaintiffs state that their allegations

sufficiently plead a cause of action.  The Court disagrees.  Plaintiffs have not adequately

addressed the law or Gemini's argument regarding continued employment following an alteration

of the terms of employment.  Given the Complaint's allegations, and the opposition, Plaintiffs

accepted the changes in pay because they continued in Gemini's employ after the four pay

categories were either eliminated or reduced.  See Schachter, 47 Cal.4th at 620; Sing, 186

Cal.App.4th at 356; DiGiacinto, 59 Cal.App.4th at 637.  Because there was acceptance, there is

no breach of contract.  See id.  Dismissal without leave to amend of the breach of contract claims

that are based on the alternation of the four pay categories is appropriate.  See id.

With respect to the allegation that Plaintiffs "many times" did not receive their daily

minimum pay, a different result is warranted.  The Complaint alleges the existence of a daily

minimum pay category.  As discussed above, the Complaint alleges that the amount of the daily

minimum was reduced.  What the Complaint does not allege, however, is that the daily minimum

pay was eliminated.  Therefore, the Complaint identifies an obligation to pay a daily minimum

amount and that obligation is an existing, on-going term of employment.  Because the Complaint

identifies a contractual duty to pay a daily minimum, a breach of that duty by failing to pay

Plaintiffs the minimum amount (i.e. the failure to pay $165) many times, performance by

Plaintiffs, and resulting harm, the Complaint alleges a viable claim for breach of contract.  See

Oasis West, 51 Cal.4th at 821; Complaint ¶¶ 75, 79-80.  The Court will not dismiss the breach of

contract claim that is based on the failure to pay Plaintiffs' the daily minimum amount.

With respect to the allegation that Gemini consistently created an environment which

discouraged drivers to pursue their daily minimum pay, the Court believes that this potentially

states a claim.  As indicated above, the good faith covenant mandates that neither party will do

anything that will injure the right of the other to receive the benefits of the agreement.  Kransco,

23 Cal.4th at 400.  The covenant is designed to protect the express covenants of a contract.

Carma Developers, 2 Cal.4th at 373.  Here, the Complaint identifies an express covenant to pay

Plaintiffs a minimum daily amount, and states that Gemini breached that covenant many times.

If Gemini created a "hostile environment" that was intended to discourage Plaintiffs from

pursuing their contractual right to a daily minimum amount of pay, then it would appear that

Gemini engaged in conduct that was designed to prevent the Plaintiffs from receiving a benefit of

the employment contract.  However, the Court finds that the allegations regarding Gemini's

created environment to be unduly vague.  The Court has no idea what conduct Gemini actually

engaged in, or how that conduct would create a "hostile environment" towards obtaining the

daily minimum pay.  More factual allegations are necessary for Gemini to have adequate notice

for purposes of Rule 8.  Accordingly, dismissal with leave to amend is appropriate for the

contractual claim that is premised on the creation of an environment that discouraged pursuit of

the daily minimum pay.

With respect to the good faith and fair dealing claims that are based on the reductions of

two pay categories (the daily minimum pay and the additional monthly pay for Lead Drivers) and

the elimination of two pay categories (truck washing pay and detention or waiting time pay), see

Complaint ¶ 84, as discussed above, there is no breach of contract for these actions.  See

1    Schachter, 47 Cal.4th at 620; Sing, 186 Cal.App.4th at 356; DiGiacinto, 59 Cal.App.4th at 637.

2    Because this conduct does not constitute a breach of contract, it also cannot constitute a breach of

3    the covenant of good faith and fair dealing.  See Hawkins, 294 F.Supp.2d at 1124; Guz, 24

4    Cal.4th at 349-50.  Dismissal of these claims without leave to amend is appropriate.  See id.

5

6        **6.        California Business & Professions Code § 17200 (Tenth Cause of Action)**

7        *Defendant's Argument*

8        Gemini argues that this cause of action should be dismissed because it is based on

9    insufficient legal conclusions, and thus, the claim is not plausible.

10       *Plaintiffs' Argument*

11       Plaintiffs state that the relevant facts needed to establish these causes of action are

12   contained within the first thirty-three paragraphs of the complaint.

13       *Legal Standard*

14       California's Unfair Competition Law ("UCL") "prohibits, and provides civil remedies

15   for, unfair competition, which it defines as 'any unlawful, unfair, or fraudulent business act or

16   practice.'"  Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 320 (2011) (quoting Cal. Bus. &

17   Prof. Code § 17200).  "Because [the UCL] is written in the disjunctive, it establishes three

18   varieties of unfair competition – acts or practices which are unlawful, unfair, or fraudulent."  Cel-

19   Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999).

20   With respect to the "unlawful" variety of unfair competition, "the UCL permits violations of

21   other laws to be treated as unfair competition that is independently actionable."  Kasky v. Nike,

22   Inc., 27 Cal.4th 939, 949 (2002).  Virtually any law, be it federal, state, or local, can serve as a

23   predicate for an action under the UCL.  Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1361

24   (2010).  Standing under the UCL extends to a person who has suffered injury in fact and has lost

25   money or property as a result of the unfair competition.  Cal. Bus. & Prof. Code § 17204;

26   Kwikset, 51 Cal.4th at 322.  Thus, to state a claim under the UCL, a plaintiff must plead that: (1)

27   the defendant engaged in one of the three varieties of prohibited business acts or practices; and

28   (2) the plaintiff suffered an actual injury in fact as a result of the defendant's conduct.  San

Francisco Residence Club, Inc. v. Amado, 773 F.Supp.2d 822, 833 (N.D. Cal. 2011).

*Discussion*

The Complaint contains an allegation that is in fact the legal definition of the "unlawful" prong of the UCL.  See Complaint ¶ 101.  Further, previous allegations identify specific statutes that Gemini allegedly violated.  E.g. Complaint ¶¶ 46, 53, 62, 66, 72.  Given that the Complaint contains citations to many statutory sections, and given the Complaint's allegation that repeats the legal definition of "unlawful" conduct under the UCL, the Court will read the tenth cause of action as relying only on "unlawful" conduct.

Under this reading, and consistent with the analysis above, the Complaint has identified violations of Labor Code §§ 201, 226(a), and 1194.  These violations are not, however, clearly expressed within the tenth cause of action.  The allegations under the tenth cause of action simply state that Gemini's conduct violated the UCL.  A violation of a particular statute would not necessarily be clear from reading the allegations under the tenth cause of action.  Further, the tenth cause of action does not include the required allegation that Plaintiffs suffered an actual injury as result of Gemini's conduct.  See Amado, 773 F.Supp.2d at 833.  Without an allegation of actual injury, no claim is stated.

Accordingly, the Court will dismiss this cause of action with leave to amend.  Given the number of statutes that are identified throughout the Complaint, if Plaintiffs choose to file an amended complaint and continue to pursue a UCL claim, Plaintiffs are directed to list under their UCL cause of action the specific statutes that they contend form the basis of "unlawful" UCL conduct by Gemini.


**7.**      **Disgorgement of Profits Under Bus. & Prof. Code § 17200**

*Defendant's Argument*

Gemini argues that, while courts have broad remedial powers under § 17200, courts cannot order non-restitutionary relief.  Generally, disgorgement of profits is non-restitutionary and thus, not permitted.  Paragraph 103 of the Complaint, and Paragraph 35 in the prayer, should be stricken under Rule 12(f) to the extent that they request disgorgement of profits.

1   *Plaintiff's Opposition*

2       Plaintiffs state that there are no redundant, impertinent, or immaterial allegations, and that

3   the relevant facts needed to establish these causes of action are contained within the first thirty-

4   three paragraphs of the complaint.

5   *Legal Standard*

6       A plaintiff may obtain injunctive relief and restitution under the UCL, but he may not

7   obtain damages.  Clark v. Superior Court, 50 Cal.4th 605, 610 (2010); Korea Supply Co. v.

8   Lockheed Martin Corp., 29 Cal.4th 1134, 1144 (2003).  Consistent with this principal, a plaintiff

9   may obtain "restitutionary disgorgement of profits," but "non-restitutionary disgorgement of

10  profits" cannot be obtained.  Korea Supply, 29 Cal.4th at 1147, 1151-52; Feitelberg v. Credit

11  Suisse First Boston, LLC, 134 Cal.App.4th 997, 1013 (2005).  Generally, "restitutionary

12  disgorgement" focuses on the plaintiff's loss, while "non-restitutionary disgorgement" focuses on

13  the defendant's gain from the unfair practice.  Feitelberg, 134 Cal.App.4th at 1013.  If a plaintiff

14  does not have an ownership interest in the profits at issue, disgorgement is not permitted.  See

15  Korea Supply, 29 Cal.4th at 1147; Feitelberg, 134 Cal.App.4th at 1016.

16  *Discussion*

17      Initially, the Ninth Circuit has recently held that, when challenging a complaint's request

18  for damages that are unavailable as a matter of law, Rule 12(b)(6), and not Rule 12(f), is the

19  proper mechanism.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir.

20  2010).  Accordingly, the Court will treat Gemini's motion to strike as a Rule 12(b)(6) motion to

21  dismiss.

22      Paragraph 103 of the complaint in part alleges that Plaintiffs are entitled to "disgorgement

23  of all revenues, earning, profits, compensation and benefits which may have been obtained by

24  defendants as a result of such unlawful, unfair and/or fraudulent business practices."  Paragraph

25  103 appears to be an attempt to obtain non-restitutionary disgorgement.  Cf. Henderson v. Gruma

26  Corp., 2011 U.S. Dist. LEXIS 41077, *21-*24 (C.D. Cal. Apr. 11, 2011).  Plaintiffs have not

27  cited Paragraph 103 or attempted in any meaningful way to defend their request for disgorgement

28  of profits or address Gemini's arguments.

Given Plaintiffs' failure to adequately defend Paragraph 103 and Prayer Paragraph 35, the Court concludes that Plaintiffs are attempting to obtain non-restitutionary disgorgement of profits. Since those damages are unavailable as a matter of law, Plaintiffs' claim for disgorgement of profits will be dismissed with prejudice. See Marsh v. Zaazoom Solutions, LLC, 2012 U.S. Dist. LEXIS 37758, *44 (N.D. Cal. March 20, 2012); Korea Supply, 29 Cal.4th at 1147, 1151-52; Feitelberg, 134 Cal.App.4th at 1013, 1016.

## CONCLUSION

Gemini moves to dismiss eight of the ten causes of action alleged against it.

With respect to the first and second causes of action, there is insufficient information for the Court to determine at this point whether the FAAAA preempts the California meal and rest break laws. Dismissal will be denied.

As to the third cause of action, the Complaint alleges that Plaintiffs performed five tasks required by Gemini, but that there was no pay rubric that compensated Plaintiffs for performing those tasks. This sufficiently alleges a violation of Labor Code § 1194. Dismissal will be denied.

As to the fourth cause of action, Gemini moved for dismissal on the basis that this claim was dependent upon the previous three causes of action and relied on legal conclusions. Because the Court has not dismissed the previous causes of action, and because mental states may be alleged generally, the Court will not dismiss the fourth cause of action.

With respect to the fifth cause of action, the Complaint does not allege either knowing and intentional conduct or an actual suffered injury. Because these are necessary elements of a Labor Code § 226(e) claim, dismissal without prejudice is appropriate. However, with respect to Reinhardt, dismissal of any Labor Code § 226(e) claim that accrued prior to January 16, 2010, will be dismissed with prejudice because such claims are time barred.

With respect to the sixth and seventh causes of action, dismissal with prejudice of all claims based on lowering the daily minimum pay, lowering the additional monthly pay for Lead Drivers, eliminating truck washing pay, and eliminating detention/waiting time pay is appropriate

because the Complaint indicates that Gemini made the changes and Plaintiffs continued their employment after notice of those changes.  Dismissal of the breach of contract claim for failing to pay the daily minimum amount is inappropriate because the Complaint indicates a contractual obligation that was not honored by Gemini.  However, dismissal with leave to amend is appropriate for Plaintiff's claim that is based on a "hostile environment" for obtaining/pursuing the daily minimum pay because the allegations are too vague and do not sufficiently explain how Gemini unfairly created such a "hostile environment."

With respect to the tenth cause of action, the Complaint fails to adequately identify which laws Plaintiffs are relying upon to support their "unlawful activity" UCL claim, and the Complaint does not allege an actual injury as a result of "unlawful activity."  Dismissal without prejudice is appropriate.

Finally, Plaintiffs do not dispute that they seek non-restitutionary disgorgement of profits as part of their recovery under the UCL.  Because these damages are unavailable as a matter of law, Plaintiffs' prayer and request for disgorgement of profits will be dismissed with prejudice.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.     Defendant's motion to dismiss the first, second, third, and fourth causes of action is DENIED;

2.     Defendant's motion to dismiss the fifth and tenth causes of action is GRANTED with leave to amend;

3.     Defendant's motion to dismiss the sixth and seventh causes of action is:

   a.     GRANTED without leave to amend as to claims based on lowering or eliminating the daily minimum pay, the additional pay for Lead Drivers, truck washing, and detention/waiting time;

   b.     DENIED with respect to claims based on the failure to pay the daily minimum amount;

c.      GRANTED with leave to amend as to the claim based on Defendant creating an environment that discouraged Plaintiffs from pursuing their daily minimum pay;

4.   Defendant's motion to dismiss the prayer and request for disgorgement of profits is GRANTED without leave to amend;

5.   Plaintiffs may file an amended complaint that is consistent with this order within fourteen (14) days of service of this order; and

6.   If Plaintiffs choose not to file an amended complaint, Defendant shall file an answer within twenty-one (21) days of service of this order.

IT IS SO ORDERED.

Dated:   April 25, 2012                            _____
                                                   CHIEF UNITED STATES DISTRICT JUDGE